# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

ROBERT A. WEAN

               Plaintiff,

    v.

US BANK NATIONAL ASSOCIATION,

               Defendants.

CASE NO. C19-1630 MJP

ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiff's Motion for a Temporary Restraining Order (Dkt. No. 4.) Having considered the Motion, the Response (Dkt. No. 24), the Reply (Dkt. No. 28), and all related papers, the Court DENIES Plaintiff's Motion.

**Background**

On June 15, 2006, Plaintiff, Robert Wean, borrowed $528,000 from Homefield Financial Incorporated, secured by a deed of trust on his home in Kirkland, WA. (Dkt. No. 5, Declaration of Robert A. Wean ("Wean Decl."), Ex. A; Dkt. No. 6, Declaration of Christina L. Henry

("Henry Decl."), Ex. B.) On August 31, 2007, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington, receiving a bankruptcy discharge pursuant to 11 U.S.C. § 727 on December 7, 2007. (Henry Decl., Exs. C, E.) Homefield Financial obtained an order of relief from the bankruptcy stay, retaining its interest in the property even though Plaintiff's personal debts were discharged. (Henry Decl., at ¶ 5, Ex. D.)

For the next twelve years, Homefield Financial and its successors in interest attempted to foreclose on the property, sending Plaintiff notices and setting trustee's sales in 2008, 2010, 2014, 2015, 2016, and 2019. (Dkt. No. 24, Declaration of Roberto Montoya ("Montoya Decl.") Exs. E, L-1, M-6, N-1, O-1; Henry Decl., Ex. G.) In response to each of these planned trustee's sales, Plaintiff requested repayment plans, mediation, or filed for bankruptcy, which served to cancel each of the sales. (Montoya Decl., Ex. K-3 at 1, L-2, M-7, H-1, I-1, I-3, O-2.) In his requests for loan modifications, Plaintiff repeatedly implied that he was interested in keeping the property. When Plaintiff applied for a loan modification under the Home Affordable Modification Program ("HAMP") on June 28, 2010, he submitted a hardship affidavit that stated: "Due to bad economy and company downsizing – became unemployed. Since then have gained employment & financially things have stabilize[d]." (Id., Ex. L-2.) He then updated his application the following month, stating that he would "be happy to furnish a Letter of Employment from my new employer for verification." (Id., Ex. L-3.) Plaintiff provided another hardship affidavit when he applied for another HAMP loan modification on May 8, 2015. (Id., Ex. N-2.) In a letter to creditors dated February 15, 2019, Plaintiff wrote:

> I have been actively trying to negotiate a loan modification since 2008 . . . . I would like to live in this home and [am] willing to negotiate terms that will help us continue to make that a reality. I would like to have our payments lowered and would like to secure a new loan with better terms to help us remain in our home.

(Id., Ex. Q-5.)  And in May 2015, Plaintiff applied for a modification through the Home Affordable Modification Program ("HAMP"), certifying that he was seeking a modification in order to keep or sell the property.  (Id. at N-2.)  In spite of Plaintiff's multiple applications for loan modification, Plaintiff did not make any payments in furtherance of his modification agreements.[1]

On June 5, 2019 Defendants issued a new Notice of Trustee's Sale ("NOTS"), which, pursuant to the instant Motion, Defendants have agreed to delay to November 22, 2019.  (Henry Decl., at ¶ 8, Ex. G; Dkt. No. 13.)  Plaintiff now seeks a TRO to halt the pending trustee's sale, arguing that the applicable six-year statute of limitations under RCW 4.16.040 has lapsed.

**Discussion**

A TRO is an "extraordinary remedy never awarded as of right."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To obtain a TRO, Plaintiff must show: (1) a strong likelihood of success on the merits, (2) a likelihood that he will suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities is in his favor, and (4) that the requested relief is in the public interest.  Id. at 20.  Likelihood of success on the merits is the "most important" factor, and "if a movant fails to meet this 'threshold inquiry,' the court need not consider the other factors.  Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848,856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).)  Here, Defendants only contest Plaintiff's likelihood of success on the merits.  (See Dkt. No. 24.)

//

//

//

---

[1] The Parties dispute whether Plaintiff made a payment on October 4, 2013.  (Dkt. No. 24 at 6; Dkt. No. 28 at 2-3.) Plaintiff contends that if any payment was made, it was taken from his account involuntarily.  (Dkt. No. 28 at 2-3.)

**A. Likelihood of Success on the Merits**

In Washington, a promissory note and a deed of trust are written contracts subject to the six-year statute of limitations under RCW 4.16.040. Cedar W. Owners Ass'n v. Nationstar Mortg., LLC, 7 Wn.App.2d 473, 482 (2019). The statute of limitations begins at the date of discharge of a borrower's personal liability in bankruptcy. Edmundson v. Bank of Am., 194 Wn. App. 920, 931 (2016); Westar Funding, Inc. v. Sorrels, 157 Wn. App. 777, 785, as amended on denial of reconsideration (Nov. 9, 2010). Plaintiff obtained a bankruptcy discharge on December 7, 2007. (Henry Decl., at ¶ 6, Ex. E.) Therefore, unless the statute of limitations is tolled or the Plaintiff acknowledges the debt, the statute of limitations ended on December 7, 2013. The Defendants contend that both occurred here. (Dkt. No. 24 at 10-17.)

1. Tolling the Statute of Limitations

Defendants argue that the bankruptcy and foreclosure proceedings tolled the statute of limitations period for a minimum of five years, four months, and 20 days. (Dkt. No. 24 at 14-15.) Under Washington law, "[t]he commencement of a nonjudicial foreclosure proceeding tolls the six-year statute of limitations period." Cedar W., 7 Wn.App.2d at 488; Bingham v. Lechner, 45 P.3d 562, 568 (Wash. Ct. App. 2002). Bankruptcy petitions also operate to stay proceedings and, in Washington, toll the statute of limitations. Thacker v. Bank of New York Mellon, No. 18-5562 RJB, 2019 WL 1163841, at *6 (W.D. Wash. Mar. 13, 2019) (citing 11 U.S.C. § 362(a)(3); Merceri v. Deutsche Bank AG, 2 Wn.App. 143, 154 (2018)).

Plaintiff contends that a voluntarily withdrawn or dismissed judicial foreclosure action is a "legal nullity" that should not operate to toll the statute of limitations. (Id. at 6.) However, "Washington courts have long recognized that the initiation of non-judicial foreclosure proceedings tolls the statute of limitations on the foreclosure of the subject property." Hoffman

v. PennyMac Holdings, LLC, No. C17-1062JLR, 2018 WL 6448779, at *5 (W.D. Wash. Dec. 10, 2018); see also Bingham, 111 Wn. App. at 128 (stating that a party's "filing of [non-judicial] foreclosure proceedings . . . tolled the statute of limitations"). This includes "multiple, incomplete, non-judicial foreclosure proceedings." Fujita v. Quality Loan Serv. Corp. of Wash., No. C16-925-TSZ, 2016 WL 4430464, at *2 (W.D. Wash. Aug. 22, 2016); see also Edmundson, 194 Wn. App. at 930 (tolling of the statute of limitations on foreclosure occurs when a lender advises the borrower of its intent to "resort to the remedies of the Deeds of Trust Act" by sending a written notice of default via certified mail to the borrower). The Court finds that the many foreclosure proceedings in this case tolled the statute of limitations.

Plaintiff also challenges Defendants' calculations, concluding that instead of the 1,966 tolling days Defendants have calculated, the tolling period should total no more than 1,275 days. (Dkt. No. 28 at 7.) But Plaintiff offers start and stop dates for the tolling windows that are unsupported by the record. (Compare, e.g., Dkt. No. 28 at 7 (stating a Notice of Default was filed on November 28, 2007, with Montoya Decl., Ex. K-1 at 1 (the Notice of Default, dated September 3, 2007.)

Although Plaintiff's arguments are unsuccessful, Defendants' calculations nevertheless fail to place the current planned foreclosure sale within the statute of limitations. Plaintiff received a bankruptcy discharge on December 7, 2007 (Henry Decl., at ¶ 6, Ex. E), meaning that without tolling, the six-year statute of limitations expired on December 7, 2013. RCW § 7.28.040. Even if the Court were to adopt Defendants' proposed tolling calculations of five years, four months, and 20 days, (Dkt. No. 24 at 14-15), the current foreclosure sale was initiated on June 5, 2019, several days after April 27, 2019, when the statute of limitations would have ended. (Henry Decl., at ¶ 8, Ex. G; Dkt. No. 13.) As explained more fully below, the Court

finds that the planned foreclosure sale is within the statute of limitations only because Plaintiff restarted the statute when he applied for loan modifications.

2. Acknowledgment of the Debt

Plaintiff's June 28, 2010 and May 8, 2015 applications for loan modification under the HAMP program restarted the statute of limitations. (Montoya Decl., Exs. L-2, L-3); Thacker, 2019 WL 1163841, at *6. An action barred by the six-year statute of limitations applicable to contracts can be pursued where there is a "written acknowledgment or promise signed by the debtor that recognizes the debt's existence, is communicated to the creditor, and does not indicate an intent not to pay." In re Tragopan Properties, LLC, 164 Wn. App. 268, 273 (2011). Before the period has run, the "legal action must be upon the original debt or upon the paper evidencing it," and "any acknowledgment of the debt should necessarily infer an agreement to pay it, unless something in the acknowledgment leads to a contrary conclusion." Id. In his HAMP applications Plaintiff acknowledged his debt, provided a signed hardship affidavit, and did not indicate an intent not to pay the debt. (Montoya Decl., Exs. L-2, L-3)

Plaintiff argues that his applications for a loan modification was in fact a statement of his intent not to pay the original debt, (Dkt. No. 28 at 4) but provides no evidence that loan modification pursuant to HAMP would have eliminated the debt obligation, rather than simply decreasing monthly payments. Further, in his applications, Plaintiff appears eager to make payments on the debt, stating that he "gained employment & financially things have stabilize[d]," offering in an update a month later that he would "be happy to furnish a Letter of Employment from my new employer for verification." (Montoya Decl., Exs. L-2, L-3.) Plaintiff has simply presented no evidence that contradicts the "necessary[y] inference" the Court must make upon Plaintiff's acknowledgement of the debt. Tragopan, 164 Wn. App. at 273. Plaintiff's

2010 and 2015 applications for loan modification under the HAMP program therefore restarted the statute of limitations, extending the limitations period an additional six-years from Plaintiff's second HAMP application to May 8, 2021.

**Conclusion**

Because Plaintiff's loan applications restarted the statute of limitations in 2010 and 2015, the Court finds that the statute of limitations on Defendants' foreclosure action has not run. The Court therefore DENIES Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 3, 2019.

Marsha J. Pechman
United States District Judge